UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,

    Plaintiff,

    v.

CANTRELL FUNERAL HOME INC., ET AL.,

    Defendants.

Case No. 19-cv-12263

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## **OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [#25]**

### I. INTRODUCTION

On August 1, 2019, Plaintiff Allstate Insurance Company ("Plaintiff") filed the instant declaratory judgment against Defendants Cantrell Funeral Home, Inc.; Rec-Mac, Inc.; and Raymond E. Cantrell II (collectively, "Defendants"). *See* ECF No. 1. On August 16, 2019, Plaintiff amended its Complaint to clarify Defendant Raymond E. Cantrell's domicile. *See* ECF No. 11.

Presently before the Court is Plaintiff's Motion for Default Judgment. ECF No. 25. Defendants have failed to file an answer or otherwise defend this matter. A hearing on Plaintiff's Motion was held on December 17, 2019. On December 18, 2019, the Court entered an Order holding Plaintiff's present Motion in abeyance in light of then-Proposed Intervenor Federated Mutual Insurance Company's

1

("Federated") Motion to Intervene.[1] *See* ECF No. 31. For the reasons that follow, the Court will **GRANT** Plaintiff's Motion for Default Judgment [#25].

## II. FACTUAL BACKGROUND

The instant action stems from two cases currently pending in the Wayne County Circuit Court. In the first case, *Milo Marshall v. Cantrell Funeral Homes Inc. and Raymond Cantrell II*, No. 19-008294-NO, Plaintiff Milo Marshall purports that the remains of his father, Willie Marshall, were discovered in Cantrell Funeral Home in 2018—twenty years after the alleged cremation. ECF No. 11, PageID.260. In the second case, *Kamiesha McClendon v. Cantrell Funeral Home, Inc., et al.*, No. 19-008293-NO, Plaintiff Kamiesha McClendon alleges that the remains of her son, Christian Hunt, were discovered in the ceiling of Cantrell Funeral Home in 2018. *Id.* at PageID.262. The plaintiffs in these two cases allege misconduct by Defendants related to the funeral, burial, and/or disposition of their decedents. ECF No. 25, PageID.504. They therefore seek to impose liability on Defendants for negligent infliction of emotional distress, statutory violations of MCL § 339.1810, negligence, and gross negligence. *See id.* at PageID.506.

Plaintiff here provided commercial insurance coverage—including general liability coverage; special Funeral Director's Liability coverage; and Commercial

---

[1] Federated filed its Notice of Withdrawing Motion to Intervene on July 17, 2020. ECF No. 37. During a Status Conference with the parties on August 21, 2020, Federated confirmed its prior Motion's status.

Umbrella/excess liability coverage—to Defendant Cantrell Funeral Homes, Inc. from October 1, 1998 to February 1, 2016. *Id.* at PageID.504. Plaintiff contends, however, that there is neither defense nor indemnity insurance coverage available to Defendants for three reasons. First, the pending claims do not meet the requirements of the policies' insuring agreements. *Id.* at PageID.506. Second, the claims against Defendants arise out of conduct for which coverage is "specifically excluded" under the policies. *Id.* Finally, the claims arose outside of the applicable period for the policies. *Id.* Plaintiff allegedly informed its insured, as well as potential additional insureds, that it will not cover the defense or indemnity of the *Marshall* or *McClendon* lawsuits. ECF No. 11, PageID.251.

On August 1, 2019, Plaintiff commenced the instant action against Defendants. ECF No. 1. Plaintiff filed its Amended Complaint on August 16, 2019. ECF No. 11. Plaintiff's Amended Complaint brought two counts of declaratory relief pursuant to 28 U.S.C. § 2201: (1) that it has no obligation to participate in the defense on behalf of Defendants in the underlying lawsuits, including the payment of any attorney's fees, costs, and/or expenses in connection with the lawsuits; and (2) that it has no obligation to indemnify Defendants for any of the underlying cases known or any of the cases that may arise out of the same facts and circumstances in the future. *Id.* at PageID.251. Defendants failed to file an answer or otherwise defend this matter in accordance with Federal Rule of Civil Procedure 12.

On September 16, 2019, Plaintiff filed a request for the Clerk's Entry of Default against each Defendant. ECF Nos. 18, 19, 20. The Clerk entered a Default as to each Defendant that same day. ECF Nos. 21, 22, 23. On October 28, 2019, Plaintiff filed the present Motion, asking this Court to enter a default judgment in its favor, finding that it owes no duty to defend or indemnify the Defendants for the pending *Marshall* and *McClendon* lawsuits. ECF No. 25. Defendants did not file a response to the Motion.

Plaintiff now moves the Court to enter a default declaratory judgment against Defendants, finding that Plaintiff has no obligation to defend or indemnify Defendants in the two underlying state court actions, *Milo Marshall v. Cantrell Funeral Homes Inc. and Raymond Cantrell II*, and *Kamiesha McClendon v. Cantrell Funeral Home, Inc., et al.*, when the claims asserted therein do not meet the requirements of Plaintiff's insuring agreements; the claims arose out of conduct for which coverage is specifically excluded under Plaintiff's policies; and the claims arose outside of the applicable policy periods. *See* ECF No. 25, PageID.514. On December 16, 2019, one day prior to the Court's hearing of Plaintiff's present Motion, then-Proposed Intervenor Federated filed a Motion to Intervene in this action. ECF No. 29. The Court entered an Order on December 18, 2019 holding the present Motion in abeyance until it resolves Federated's Motion to Intervene. ECF

4

No. 31. Federated has since withdrawn its Motion and has communicated to the Court that its outstanding issues with Plaintiff are now resolved.

### III. LEGAL STANDARD

#### A. Motion for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure governs entry of judgment by default. In order to obtain judgment by default, the proponent must first request the Clerk's entry of default pursuant to Rule 55(a). Once a default has been entered by the Clerk, the plaintiff's well-pleaded allegations are deemed admitted. *See, e.g.*, *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007); *State Farm Fire and Casualty Company v. Piron*, No. 11-11375, 2011 WL 3625048, at *1 (E.D. Mich. July 28, 2011). The plaintiff may then file for default judgment by the Clerk or by the court. FED. R. CIV. P. 55(b).

When the plaintiff's complaint alleges damages for a sum certain, the Clerk "on plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing…." FED. R. CIV. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2). A default judgment may be entered without a hearing unless it is necessary to determine the amount of monetary damages. *Id.* The court must exercise "sound judicial discretion" when determining whether to enter the default judgment. 10A CHARLES ALAN WRIGHT,

ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2685 (3d ed. 1988); *see also Applebaum v. Target Corporation*, No. 11-cv-15035, 2015 WL 13050014, at *1 (E.D. Mich. Sept. 10, 2015); *Piron*, 2013 WL 1843965, at *2.

### B. The Declaratory Judgment Act

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. It does not provide an independent basis for jurisdiction. Rather, it provides courts with discretion to fashion a remedy in cases where federal jurisdiction already exists. *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). In the present matter, the jurisdiction of the Court to hear Plaintiff's declaratory judgment action arises out of diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* ECF No. 11, PageID.252.

While the Declaratory Judgment Act provides this Court with jurisdiction, the Supreme Court of the United States has explained that a district court is "under no compulsion to exercise that jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). In the Sixth Circuit, courts consider five factors in deciding whether a case is appropriate for declaratory judgment:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

### IV. ANALYSIS

The instant matter arises under the Declaratory Judgment Act. *See* ECF No. 25, PageID.497. A clerk's entry of default is not a guarantee that a court's entry of default judgment is going to follow in a suit arising under the Declaratory Judgment Act. *See, e.g.*, *Auto-Owners Insurance Co. v. Davidson*, No. 1:17-CV-83, 2017 WL 5035085, at *3 (E.D. Tenn. Nov. 1, 2017). In federal actions under the Declaratory Judgment Act, any potential risk of "interference with the orderly and comprehensive disposition of a state court litigation" should be avoided. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942).

Plaintiff does not identify any of the aforementioned factors for this Court to consider in its request for declaratory judgment. Plaintiff instead contends that Defendants, as a result of the Clerk's entry of default, have admitted all of the facts

alleged in its Amended Complaint.  ECF No. 25, PageID.499 (citing *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62–63 (1st Cir. 2002)).

In its Motion, Plaintiff argues that "[t]he question in declaratory actions such as this one, brought to determine the scope of coverage, is whether there is a theory of liability on which the tort claimant can prevail, and as to which there is coverage." *Id.* at PageID.507.  Specifically, "the question [for this Court] is [the] application of the terms of the insurance contract to the conduct of the Defendants and the resulting alleged injury, not whether Defendants might be held liable under the legal theories asserted in the underlying [Wayne County Circuit Court] Complaints." *Id.*

According to Plaintiff, its insurance coverage to Defendants "only extends to conduct considered 'accidental' and falling within the policy definition of an 'occurrence,' while specifically excluding coverage for the Defendants' intentional or criminal conduct." *Id.* at PageID.509.  Further, its coverage only applies to damages which occurred within the specific policy periods: October 1, 1998 to February 1, 2016. *Id.* at PageID.509–10.

Plaintiff argues that it does not owe a duty to defend or indemnify the Defendants in either the *Marshall* or *McClendon* lawsuits for two reasons.  First, Plaintiffs Milo Marshall's and Kamiesha McClendon's alleged damages occurred as a result of Defendants' intentional acts, including violations of MCL 339.1810, which purportedly fall "within the applicable policy exclusions." *Id.* at PageID.510,

512. Second, Plaintiffs Milo Marshall's and Kamiesha McClendon's alleged damages occurred outside of the insurance coverage period. *Id.* at PageID.511, 512. Specifically, in *Marshall*, the decedent passed away prior to the start of the Allstate policy period and Plaintiff Milo Marshall did not discover Defendants' alleged mistreatment of the decedent until 2018—two years after the Allstate policy period concluded. *Id.* at PageID.511. In *McClendon*, the decedent passed away in 2018; therefore, Plaintiff Kamiesha McClendon did not become aware of Defendants' mishandling of her decedent's remains until after the Allstate policy period concluded. *Id.* at PageID.512.

Generally, exclusions in an insurance policy should be construed strictly in favor of the insured. *See Allstate Ins. Co. v. Saph*, No. 13-13112, 2014 WL 3900607, at *3 (E.D. Mich. Aug. 11, 2014). "Clear and specific exclusions," however, must be given effect to avoid holding an insurance company liable for a risk it did not assume. *Id.* (citing *McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co.*, 559 N.W.2d 93 (Mich. App. 1996)).

Here, Plaintiff cites to *Reed v. Netherlands Ins. Co.*, 860 F.Supp.2d 407, 414 (E.D. Mich. Feb. 16, 2012), to support its argument that its insurance policies do not cover the alleged damages in either the *Marshall* or *McClendon* lawsuits. Plaintiff emphasizes that the purported emotional distress damages in both these cases "did not accrue until after termination of the policy period." *Id.* at PageID.511, 512. In

*Reed*, the court explained that "[e]motional distress claims generally do not ripen until the plaintiff suffers the emotional distress. Under the circumstances of this case, a plaintiff's claim for mental anguish would not accrue until the plaintiff is actually aware that human remains were mishandled." *Reed*, 860 F.Supp.2d at 413 (internal citations omitted).

Additionally, the court in *Reed* explained that the insurance policy at issue was an "occurrence" policy. *Id.* at 414. In such a policy, there can be no coverage for an event which doesn't occur during the policy period. *See Frankenmuth Mutual Ins. Co., Inc. v. Eurich*, 394 N.W.2d 70 (Mich. Ct. App. 1986) (finding that a general liability insurer had no duty to defend because the occurrence fell outside the policy period); *Employers Mutual Liability Ins. Co. of Wisconsin v. Michigan Mutual Auto Ins. Co.*, 300 N.W.2d 682 (Mich. Ct. App. 1980) (holding that when the negligent act occurs during the policy period but the damages do not occur until after the policy has been cancelled, the insurance policy does not cover the accident).

In the instant matter, Plaintiffs Milo Marshall and Kamiesha McClendon similarly discovered that their decedents' remains were mistreated—conduct which allegedly gave rise to their independent emotional distress claims—after Plaintiff's provided insurance coverage was terminated on February 1, 2016. Further, the insurance coverage, like the one at issue in *Reed*, was an "occurrence" policy. The Commercial General Liability Policy provides that Plaintiff would pay the sums

which Defendant became legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" to which the insurance applied to during the policy periods. ECF No. 11, PageID.254–55. "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at PageID.256. Both the Commercial General Liability Policy and the Umbrella Policy exclude liability coverage for bodily injury or property damage expected or intended from the standpoint of the Defendant. *See* ECF No. 25, PageID.509. Stated differently, Plaintiff's insurance coverage excludes coverage for Defendants' intentional or criminal conduct. *Id.* at PageID.509. The Court agrees with Plaintiff that *Reed* provides persuasive authority both for the proposition that the emotional distress damages alleged in the state court lawsuits did not ripen until after the termination of its policy period and that no coverage existed for the claimed bodily injuries occurring outside of the policy period.

This Court's analysis of whether to enter default judgment in the instant matter cannot conclude with *Reed*, though. This Court finds it necessary to apply the *Grand Trunk* factors since Plaintiff's claims arise under the Declaratory Judgment Act. Applying these factors to this case, as explained below, persuades the Court that it should decline to exercise jurisdiction under the Declaratory Judgment Act.

1. **Factor #1 – Settling the Controversy**

As to the first *Grand Trunk* factor, which evaluates whether the declaratory action would settle the controversy, a declaratory action here will definitively determine whether or not Plaintiff owes a duty to defend and indemnify Defendants in the state court lawsuits. "[A] prompt declaration of policy coverage would surely 'serve a useful purpose in clarifying the legal relations at issue.'" *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). A grant of declaratory relief would "settle the scope of insurance coverage" under Plaintiff's policies. *See Liberty Mut. Fire Ins. Co. v. Salmo*, No. 09-13482, 2010 WL 2740170, at *3 (E.D. Mich. July 12, 2010). Accordingly, this factor weighs in favor of this Court's exercise of jurisdiction.

2. **Factor #2 – Useful Purpose in Clarifying the Legal Relations at Issue**

The first and second *Grand Trunk* factors are closely related. *Salmo*, 2010 WL 2740170, at *3. The second factor evaluates whether a declaratory action would serve a useful purpose in clarifying legal relations at issue. *Grand Trunk*, 746 F.2d at 326. The Sixth Circuit has explained that "[w]hile the parties may have other tortious or contractual relationships to clarify in state court, [the] concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the

insurance indemnity obligation of the insurer." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008).

The declaratory action will conclusively determine Plaintiff's duty to Defendants in the underlying state court lawsuits. Neither of the two lawsuits have been tendered to Plaintiff for defense at the time of this writing. Moreover, during a Status Conference with the parties on August 21, 2020, Plaintiff explained that Defendants have not communicated any information related to the underlying state court lawsuits. This Court's determination of the legal relationship between Plaintiff and Defendants, therefore, should not complicate the state court's analysis of liability issues. *Cf. Salmo*, 2010 WL 2740170, at *3 (finding that the second *Grand Trunk* factor weighed against the court's exercise of jurisdiction since the named parties in the underlying state lawsuit filed motions to intervene as interested parties; the district court concluded that its decision "might confuse the state court's analysis of [the] liability issues"). Accordingly, this second factor weighs in favor of this Court's exercise of jurisdiction.

### 3. Factor #3 – Procedural Fencing or Arena for a Race for Res Judicata

The third *Grand Trunk* factor evaluates whether a party's request for declaratory judgment action is motivated by "procedural fencing" or is likely to create a race for res judicata. *Grand Trunk*, 746 F.2d at 326. When a plaintiff files its claim after a state court litigation has begun, courts generally give that plaintiff

the benefit of the doubt that no improper motive fueled the filing of the action. *See Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004). This factor "is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Esurance Property and Casualty Insurance Co. v. Johnson*, No. 16-cv-11880, 2017 WL 3272157, at *3 (E.D. Mich. Apr. 20, 2017) (internal citations omitted).

Here, Plaintiff filed the instant action within three months of when the underlying state court lawsuits were filed. Additionally, this Court emphasizes Defendants' lack of defense; they have not attempted to dispute Plaintiff's motive in bringing the instant action.

Further, the Sixth Circuit has explained that "[i]f [an insurer] in fact [has] no duty to indemnify its insured or to defend them in the state action, then it should not be forced to participate in the action." *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 454 (6th Cir. 2003). Here, this Court finds it plausible that Plaintiff's commencement of this action is for the valid purpose of avoiding forced participation in the underlying lawsuits. A declaratory judgment will undoubtedly clarify the relationship between Plaintiff and Defendants, even if other issues remain amongst the name parties in the state court lawsuits. Accordingly, this third factor weighs in favor of this Court's exercise of jurisdiction.

### 4. Factor #4 – Increased Friction Between Federal and State Courts

Next, this Court must determine whether exercising jurisdiction over this case would increase friction between federal and state courts. *See Grand Trunk*, 746 F.2d at 326. The Supreme Court cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). The mere existence of a state court proceeding, though, is not determinative of improper federal encroachment upon state jurisdiction. *Allstate Insurance Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987), *abrogated on other grounds by Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000).

Courts must consider three additional factors when analyzing the fourth *Grand Trunk* factor:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action."

*Scottsdale Ins. Co.*, 513 F.3d at 560.

The primary issue under the first sub-factor is whether "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* Defendants failed to file an answer or otherwise defend this matter to argue that the state court will be making any findings related to the discrete controversy at issue here. Further, there is nothing in the record which indicates that a conflict would result if this Court retained jurisdiction. *See Johnson*, 2017 WL 3272157, at *4.

The second sub-factor concerns whether the state court "is in a better position to resolve the issues in the declaratory action." *Scottsdale Ins. Co.*, 513 F.3d at 560. Plaintiff is not a party to the state court lawsuits. There is no indication that the state courts are considering the issues presented in the instant matter.

The third sub-factor concerns whether the issue in this action "implicate[s] important state policies and is, thus, more appropriately considered in state court." *Id.* There is no apparent dispute over the interpretation or enforceability of Plaintiff's provided insurance policies, as Defendants failed to raise any potential concerns with the underlying state court lawsuits.

The three sub-factors each weigh in favor of the Court's exercise of jurisdiction; accordingly, the fourth *Grand Trunk* factor, in its entirety, weighs in favor of the exercise of jurisdiction.

### 5. Factor #5 – Availability of Better or More Effective Alternative Remedy

The fifth and final *Grand Trunk* factor evaluates the availability of an alternative remedy. *See Grand Trunk*, 746 F.2d at 326. Plaintiff could seek a declaratory judgment action in state court. MICH. CT. R. 2.605(A)(1). However, "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action." *Scottsdale Ins. Co.*, 513 F.3d at 562.

Defendants, in choosing not to file an answer or otherwise defend this matter, do not argue that a state court declaratory judgment action would be better or more effective than a federal court declaratory judgment action. *Cf. Johnson*, 2017 WL 3272157, at *5 (district court recognized the moving defendants' argument that the availability of a state court declaratory judgment action as an "other remed[y]" available to plaintiff). This Court therefore does not have a record to analyze the plausibility of another remedy in the instant matter. Even if Defendants presented such an argument, though, this Court concludes that the alternative state court action would not necessarily present a better remedy. Accordingly, this final factor also weighs in favor of exercising jurisdiction.

In sum, each of the five factors this Court must consider weighs in favor of the exercise of jurisdiction. Accordingly, and in light of the "unique and substantial" discretion which the Declaratory Judgment Act confers on district courts, this Court

will exercise its jurisdiction in granting declaratory relief. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

## V. CONCLUSION

For the reasons articulated above, the Court **GRANTS** Plaintiff's Motion for Default Judgment [#25].

IT IS SO ORDERED.

Dated: August 21, 2020

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 21, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager